UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

NATIONAL SPECIALTY INSURANCE                    CASE NO:
COMPANY,

                Plaintiff,

vs.

ABS FREIGHT TRANSPORTATION, INC., an Illinois
corporation; ABS TRANSPORT, INC., an Illinois
corporation; ANDRII PLYS, an individual; DEEN LLC,
an Alabama corporation; AUDREY MARTIN-VEGUE,
individually and as Personal Representative of the Estate
of Howard Martin-Vegue; DEBORAH JOHNSON, an
individual; BENJAMIN JOHNSON, an individual;
MIGUEL TORRES, an individual; STEVEN TREMPE, an
individual; TYLER TREMPE, an Individual; HERBERT
LEE CHAPMAN III, an individual; and MICHAEL
CHAPMAN, an individual,

                Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

National Specialty Insurance Company ("NSIC"), by and through its undersigned

counsel, hereby files its Complaint for Declaratory Judgment against ABS Freight

Transportation, Inc., ABS Transport, Inc., Andrii Plys, Deen LLC, Audrey Vegue,

individually, and as the Personal Representative of the Estate of Howard Martin-Vegue,

Deborah Johnson, Benjamin Johnson, Miguel Torres, Steven Trempe, Tyler Trempe,

Herbert Lee Chapman III and Michael Chapman, and alleges as follows:

### Jurisdiction and Venue

1.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

2.      Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367  because there is diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of fees and costs.

3.      Jurisdiction is also proper based upon a federal question pursuant to 28 U.S.C. § 1331 with respect to Count II because this declaratory judgment requires resolution of the operation and effect of the MCS-90 endorsement attached to the insurance policy at issue in this lawsuit.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this claim occurred in this district.

5.      This Court has authority to declare the rights and obligations of the parties under the terms and provisions of the insurance policy at issue in this lawsuit as provided by 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

### Parties

6.      At all times material to this action, Plaintiff, NSIC, was a Texas corporation with its principal place of business in Texas.

7.      At all times material to this action, Defendant ABS FREIGHT TRANSPORTATION, INC. ("FREIGHT") was an Illinois corporation with its principal place of business in Illinois.

8.      At all times material to this action, Defendant ABS TRANSPORT, INC. ("TRANSPORT") was an Illinois corporation with its principal place of business in Illinois.

9.      At all times material to this action, Andrii Plys ("PLYS") was either a Florida or Alabama resident.

10.     At all times material to this action, Deen LLC ("DEEN") was an Alabama corporation with its principal place of business in Alabama.

11.     At all times material to this action, AUDREY MARTIN-VEGUE, individually, and as Personal Representative of the Estate of Howard Martin-Vegue, was a Florida resident.

12.     At all times material to this action, DEBORAH JOHNSON was a Florida resident.

13.     At all times material to this action, BENJAMIN JOHNSON was a Florida resident.

14.     At all times material to this action, MIGUEL TORRES ("TORRES") was a Florida resident.

15.     At all times material to this action, STEVEN TREMPE was a Florida resident.

16.     At all times material to this action, TYLER TREMPE was a Florida resident.

17.     At all times materials to this action, HERBERT LEE CHAPMAN III was a Florida resident.

18.     At all times material to this action, MICHAEL CHAPMAN was a Florida resident.

**Underlying Accident**

19.     This litigation arises out of a multiple-vehicle accident that occurred on November 29, 2012 in Martin County, Florida ("Underlying Accident").

3

20.     On November 29, 2012, PLYS was operating a Freightliner tractor that was hauling a trailer southbound on State Road 9 (I-95) when he collided with a vehicle that Howard Martin-Vegue was operating.

21.     Several subsequent collisions involving other vehicles then took place.

**Relationship among FREIGHT, PLYS, TRANSPORT AND DEEN**

22.     FREIGHT owned the trailer that PLYS was hauling at the time of the Underlying Accident.

23.     FREIGHT leased the trailer to TRANSPORT.  A copy of the Equipment Lease Agreement is attached as Exhibit A.

24.     FREIGHT did not employ PLYS, and PLYS was not an independent contractor for FREIGHT.

25.     FREIGHT did not employ TRANSPORT, and TRANSPORT was not an independent contractor for FREIGHT.

26.     FREIGHT did not employ DEEN, and DEEN was not an independent contractor for FREIGHT.

27.     DEEN owned the Freightliner tractor that PLYS was operating at the time of the accident.

28.     DEEN employed PLYS as a driver.

29.     DEEN, an owner-operator, leased its tractor and driver, PLYS, to TRANSPORT.  A copy of the Lease Agreement is attached as Exhibit B.

30.     TRANSPORT'S name and placard were displayed on the tractor owned by DEEN.

31.     TRANSPORT was the motor carrier at the time of the Underlying Accident.

## NSIC Insurance Policy Issued to FREIGHT

32.     NSIC issued a Truckers policy to FREIGHT which is policy number TFM 500980, effective from January 30, 2012 to January 30, 2013 (the "Freight Policy").  A copy of the Freight Policy is attached as Exhibit C.

33.     The Freight Policy has the following pertinent language:

**SECTION II – LIABILITY COVERAGE**

**A.     Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a coverage auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos".  However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

**SECTION VI – DEFINITIONS**

**A.**     "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.**     "Auto" means:

**1.**     A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.**     Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

5

\*\*\*

**G.**    "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage.  Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

\*\*\*

**P.**    "Trailer" includes semitrailer or a dolly used to convert a semitrailer into a trailer.  But for Trailer Interchange Coverage only, "trailer" also includes a container.

\*\*\*

**Q.**    "Trucker" means any person or organization engaged in the business of transporting property by "auto" for hire.

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WHO IS AN INSURED**

This endorsement modifies insurance provided under the following:

   BUSINESS AUTO COVERAGE FORM
   GARAGE COVERAGE FORM
   MOTOR CARRIER COVERAGE FORM
   TRUCKERS COVERAGE FORM

**Section II – Liability Coverage, paragraph A.1., Who Is An Insured** is amended to read as follows:

**1.    Who Is An Insured**

   The following are "insureds":

**a.**    You for any covered "auto".

**b.**    Anyone else while using with your express or implied permission a covered "auto" you own, hire or borrow.  However, none of the following are "insureds" under this subparagraph:

   **(1).**    The owner or anyone else from whom you lease, rent, hire or borrow a covered private passenger "auto".

6

(2).    Your "employee" or agent if the coverage "auto" is a "private passenger type" "auto" and is owened by that "employee or agent or a member of his or her household.

(3).    Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4).    Anyone ·other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), for a covered "private passenger type" "auto" owned by him or her or a member of his or her household.

(5).    A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "private passenger type" "auto" owned by him or her or a member of his or her household.

(6).    If you are in the business of leasing "autos" to others, any lessee or employee or agent of the lessee.

(7).    Anyone who has leased, hired, rented, or borrowed an "auto" from you that is used in a business other than yours.

(8).    Anyone that is using an "auto" of yours under a written lease or trailer interchange agreement.

\*\*\*

34.    The Freight Policy has an MCS-90 endorsement that provides:

\*\*\*

**ENDORSEMENT FOR**
**MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY**
**UNDER SECTION 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**


7648 Plaza Court

Issued to <u>ABS Freight Transportation, Inc.</u>        Of      <u>Willowbrook, IL 60527</u>

Dated at New York   this  <u>     30th     </u>  Day of  <u>          January, 2012          </u>

Amending Policy No. TFM 500980          Effective Date <u>Jan. 30th, 2012          </u>


The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits of liability described herein, as a motor carrier of property, with Sections 29 and 30 of the

Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMSCA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment received against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.  Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo.  It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

***

**Claims arising out of the Underlying Accident**

35.  AUDREY MARTIN-VEGUE, individually and as the Personal Representative the Estate of Howard Martin-Vegue, offered to fully and finally settle her claims against TRANSPORT for $1 million.   A copy of the May 1, 2013 Release and Settlement Agreement is attached as Exhibit D.

36.  AUDREY MARTIN-VEGUE, individually and as the Personal Representative the Estate of Howard Martin-Vegue, also offered to fully and finally settle her claims against PLYS and DEEN for $1 million, "except to the extent that there is other liability insurance available to" PLYS and DEEN "from a source other than [the Transport Policy]."  See Exhibit D.

37.  NSIC insured TRANSPORT, PLYS and DEEN under a policy it issued to TRANSPORT ("Transport Policy").

8

38.     NSIC accepted AUDREY MARTIN-VEGUE'S settlement offers and tendered $1 million under the Transport Policy to AUDREY MARTIN-VEGUE.   See Exhibit D.

39.     Under this settlement, AUDREY MARTIN-VEGUE could seek to obtain other liability insurance coverage available to PLYS and DEEN, too.  Regardless, PLYS and DEEN would be fully and finally released "upon the exhaustion and conclusion of recovery efforts seeking other liability insurance available" to PLYS and DEEN.  See Exhibit D.

40.     The Release and Settlement Agreement stated that AUDREY MARTIN-VEGUE would not seek "satisfaction of any judgment against PLYS, individually" and DEEN, "except to the extent of the payment [of the $1 million] as well as from any other source of liability insurance coverage that may be available" to PLYS and DEEN.  See Exhibit D.

41.     This settlement exhausted the limits of the Transport Policy.

42.     AUDREY MARTIN-VEGUE'S lawsuit remains pending against PLYS.  A copy of Martin-Vegue's Complaint is attached as Exhibit E.

43.     DEBORAH JOHNSON and BENJAMIN JOHNSON have filed a lawsuit against TRANSPORT and PLYS arising out of the Underlying Accident.  A copy of the Johnsons' Complaint is attached as Exhibit F.

44.     Other persons involved in the accident, including TORRES, STEVEN TREMPE, TYLER TREMPE, HERBERT LEE CHAPMAN III and MICHEAL CHAPMAN have retained counsel and brought pre-suit claims against TRANSPORT, PLYS and/or DEEN.

## REQUEST FOR DECLARATORY JUDGMENT

45.     NSIC seeks a declaration that the Freight Policy does not require NSIC to defend and/or indemnify TRANSPORT, PLYS and DEEN against any suits or claims arising out of the Underlying Accident because they are not "insureds" under the Freight Policy.

46.     NSIC also seeks a separate declaration that NSIC does not have any duties or obligations under the MCS-90 endorsement in the Freight Policy.

47.     There exists a bona fide, actual, present and practical need for a declaration that TRANSPORT, PLYS and DEEN are not "insureds" under the Freight Policy.

48.     There exists a bona fide, actual, present and practical need for a declaration that the MCS-90 endorsement in the Freight Policy does not provided coverage for any claims against FREIGHT, TRANSPORT, PLYS and DEEN.

49.     The rights of NSIC under the Freight Policy are dependent upon the facts and law applicable to the facts affecting coverage under the Freight Policy and under the MCS-90 endorsement.

50.     All proper and present antagonistic or adverse interests are before the Court by proper process.

## COUNT I
## TRANSPORT, PLYS AND DEEN ARE NOT "INSUREDS" UNDER THE FREIGHT POLICY

51.     NSIC re-alleges and incorporates paragraphs 1 though 50 of this Complaint for Declaratory Judgment as if fully set forth here.

52.     The Freight Policy has a Who Is An Insured endorsement that amends the Freight Policy's Section II – Liability Coverage, paragraph A.1., Who Is An Insured.

53.     The Who Is An Insured endorsement, among other things, identifies those who are not "insureds" under the Freight Policy.

54.     TRANSPORT, PLYS and DEEN are not "insureds" under the Freight Policy.

55.     TRANSPORT, PLYS and DEEN are not "insureds" under the Freight Policy because subparagraph 1.b.(6). of the Who Is An Insured endorsement specifies that "if [FREIGHT] [is] in the business of leasing 'autos' to others, any lessee or employee or agent of the lessee" is not an "insured."

56.     The Freight Policy's definition of an "auto" includes a trailer.

57.     Because FREIGHT was in the business of leasing its trailer to TRANSPORT and because TRANSPORT or an employee or agent of TRANSPORT is not an "insured," TRANSPORT, PLYS and DEEN are not "insureds" under the Freight Policy.

58.     In addition, TRANSPORT, PLYS and DEEN are not "insureds" under the Freight Policy because subparagraph 1.b.(7). of the Who Is An Insured endorsement provides that "[a]nyone who has leased, hired, rented, or borrowed an 'auto' from [FREIGHT] that is used in a business other than [FREIGHT'S]" is not an "insured."

59.     Because TRANSPORT leased the trailer from FREIGHT that was used in a business other than FREIGHT'S, TRANSPORT, PLYS and DEEN are not "insureds" under the Freight Policy.

60.     Finally, TRANSPORT, PLYS and DEEN are not "insureds" under the Freight Policy because subparagraph 1.b.(8). of the Who Is An Insured endorsement provides that "[a]nyone that is using an 'auto' of [FREIGHT] under a written lease or trailer interchange agreement" is not an "insured."

61.     Because TRANSPORT, PLYS and DEEN were using FREIGHT'S trailer under a written lease, TRANSPORT, PLYS and DEEN are not "insureds" under the Freight Policy.

WHEREFORE, NSIC seeks a declaration that TRANSPORT, PLYS and DEEN are not "insureds" under the Freight Policy and that accordingly NSIC has no duty to defend or indemnify TRANSPORT, PLYS and/or DEEN for any claims or suits arising out of the Underlying Accident.

**COUNT II**
**THE MCS-90 ENDORSEMENT IN THE FREIGHT POLICY DOES NOT APPLY TO THE UNDERLYING ACCIDENT**

62.     NSIC re-alleges and incorporates paragraph 1 through 50 of this Complaint for Declaratory Judgment as if fully set forth here.

63.     The MCS-90 endorsement in the Freight Policy states that "[i]n consideration of the premium stated in the policy to which this endorsement is attached, [NSIC] agrees to pay, within the limits of liability described herein, any final judgment received against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 29 and 30 of the Motor Carrier Act of 1980."

64.     "The insured" in the MCS-90 endorsement is the named insured motor carrier specifically named in the MCS-90 endorsement and/or the Policy.

12

65.    The MCS-90 endorsement states that the endorsement was issued to "ABS Freight Transportation, Inc.," the named insured under the Freight Policy.

66.    TRANSPORT, PLYS and DEEN are not named in the MCS-90 endorsement or the Freight Policy so the MCS-90 endorsement does not apply to them.

67.    In addition, FREIGHT was not the motor carrier at the time of the Underlying Accident.

68.    Finally, even if FREIGHT were the motor carrier at the time of the Underlying Accident, FREIGHT had $1 million in auto liability insurance under the Freight Policy so the MCS-90 endorsement does not apply, and the MCS-90 endorsement therefore does not apply to the Underlying Accident.  See Exhibit C.

WHEREFORE, NSIC seeks a separate declaration that NSIC does not have any duties or obligations under the MCS-90 endorsement in the Freight Policy with respect to any claims or suits arising out of the Underlying Accident.

## Conclusion

WHEREFORE, Plaintiff, NSIC, requests this Court to enter judgment in its on each separate court in NSIC'S favor and against Defendants and such other and further relief this Court deems just and proper.

Respectfully submitted,

R. STEVEN RAWLS, ESQ.
Florida Bar No.:  0938254
srawls@butlerpappas.com
RYAN K. HILTON, ESQ.
Florida Bar No.: 0304610
rhilton@butlerpappas.com
Secondary:  eservice@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida  33602
Telephone:    (813) 281-1900
Facsimile:     (813) 281-0900
Attorneys for Plaintiff, National Specialty Insurance
Company